# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> LA POBLANITA LLP, a Washington limited liability partnership, d/b/a La Poblanita Mexican Restaurant; MARCELINO ZAPATA, a/k/a Marcelino Zapata-Perez, a/k/a Marcelino Perez, and the marital community of Marcelino Zapata and Loreno Salgado, husband and wife, <br><br> Defendants. | CASE NO. 18-5712 RJB <br><br> ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTIONS TO QUASH |

THIS MATTER comes before the Court on the Defendants' Motion to Quash Plaintiff's Subpoena Duces Tecum to Dish Network, LLC (Dkt. 24), the Plaintiff's Motion to Quash Subpoena re: Kemppainen (Dkt. 27), the Plaintiff's motion to strike (Dkt. 33), and Defendants' Motion for Summary Judgment (Dkt. 19). The Court has considered the pleadings filed regarding the motions and the remaining record.

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTIONS TO QUASH - 1

This case arises from the Defendants' alleged commercial broadcast of a boxing match between Saul Alvarez and Liam Smith, related sports commentary, and "under-card bouts" on September 17, 2016. Dkt. 1. The Plaintiff asserts that it had "exclusive nationwide commercial distribution" rights to the program and that the Defendants showed the program without permission. *Id.*

## I. FACTS

Defendant La Poblanita, LLP d/b/a La Poblanita Mexican Restaurant ("restaurant") is owned by Defendants Marcelino Zapata and his wife Loreno Salgado, who are its employees along with their daughter, Defendant Karina Zapata. Dkt. 26, 1-2. The restaurant is located at 2624 6th Street, Bremerton, Washington. Dkt. 26, at 1. The restaurant's only source of television is through satellite provided by DISH, Network, LLC ("DISH"). Dkt. 20, at 1-2. It subscribes to the "Latino Plus" package which includes many sports channels that broadcast exclusively in Spanish. *Id.*, at 2. The restaurant primarily displays programming in Spanish. *Id.*

The Plaintiff, J & J Sports Productions, Inc. ("J & J"), is a closed circuit distributor of sports programs. Dkt. 35, at 1. According to the president of J & J, it "purchased and retained the exclusive commercial exhibition (closed circuit) licensing rights to the *Saul Alvarez v. Liam Smith WBO World Super Welterweight Championship Fight Program*," which included the main fight, "undercard" bouts, (including the fight between Diego De La Hoya and Luis Orlando), and sports commentary, all of which aired on September 17, 2016 ("program"). *Id.*, at 1-2. As evidence of the company's exclusive proprietary rights to the program, J & J points to July 27, 2016 letter between J & J Sports and Golden Boy Promotions, which was sent to the attention of Eric Gomez and Robert Gasparri. Dkt. 35, at 17. The letter is entitled "Closed Circuit Proposal for Saul Alvarez vs. Liam Smith," and contains redactions, but included an offer of how to split

profits (less certain expenses). *Id*. The letter included provision that "[p]iracy [enforcement] rights will [be] granted for the United States and Canada to J & J." *Id.* It also included a provision governing territory (the United States and Canada) with a handwritten portion which indicated that "Puerto Rico was not included." *Id*. It was signed by a J & J representative and Robert Gasparri, COO, who handwrote "approved," and dated his signature on July 27, 2016. *Id*.

J & J also submitted a contract dated September 16, 2016 between Golden Boy Promotions, LLC, which was signed by J & J, but not signed by Golden Boy Productions, LLC, giving J & J the exclusive rights to the fight. Dkt. 35, at 9-16. This document provided that it "shall not become effective unless and until [Golden Boy Promotions, LLC] has accepted and signed this Agreement and returned one copy to [J & J]." *Id.*, at 16. J & J's president explains that while Golden Boy Productions, LLC did not sign this contract between the parties, they both acted in reliance on the contract- the Plaintiff did sublicense the program throughout the United States - which J & J's president asserts would not have been possible without Golden Boy Productions, LLC's assent. *Id.*, at 3. Further, he contends that "it is the standard conduct and practice" between these parties to handle contractual matters in this manner. *Id.*, at 3.

According to the Plaintiff, to prevent unauthorized access, closed circuit programs, like the program at issue here, are electronically coded or the signal is "scrambled." Dkt. 35, at 5. There are several methods that a signal pirate can unlawfully intercept such a broadcast, including installing a devise on a cable t.v. line or to a satellite receiver which "will allow for the descrambled reception of a pay-per-view event," the "purposeful misrepresentation" of a commercial establishment as a residential property to allow for the purchase of the program at the significantly reduced residential rate, the use of illegal cable drop or splice from an adjacent home to the commercial establishment, and/or the use of other "illegal unencryption devices."

Dkt. 35, at 4-5. The Plaintiff states that the Defendants here were not authorized to show the program at the restaurant. *Id.*

On the day of the fight, private investigator Kenneth Kemppainen asserts that from around 6:29 p.m. to 6:31 p.m., he visited the restaurant. Dkt. 20, at 61. He states that he saw two televisions in the restaurant. *Id.* A large flat screen t.v. was on the left and a small flat screen t.v. was on the right as he entered. *Id.* He states that there were 12-15 other patrons in the restaurant for the few minutes that he was there. *Id.*, at 62. Kemppainen asserts that:

> As I entered the establishment the HBO-PPV Canelo vs. Smith boxing event was in progress on the large flat screen TV. A pre-view announcement of the upcoming main event bout between CANELO vs. SMITH was airing. A new round between Diego De La Hoya and Luis Orlando Del Valle was just about to begin. De La Hoya was wearing black/white trunks with his last name written on the front of the trunks[,] while Del Valle was wearing white/blue trunks, but his last name was written on the back of his trunks. The HBO-PPV was broadcasting from AT&T Stadium in Arlington, Texas. The fighters were pretty much just sparring each other standing up during the round when I left the establishment.

Dkt. 20, at 61. Kemppainen clarifies that "Canelo" is a nickname for Saul Alverez and maintains that he was referring to the Alverez v. Smith fight when he stated that "[a] pre-view announcement of the upcoming main event bout between CANELO vs. SMITH was airing." Dkt. 36, at 2. He goes on to describe the restaurant as having a "brightly colored Mexican motif," including a "sombrero in one corner and paper mache 'piñata type' ornaments hanging from the ceiling." Dkt. 20, at 61.

Kemppainen took photographs of the restaurant which purport to show the outside of the establishment. Dkt. 20, at 64-65. Kemppainen also states that he took two videos during his investigation. Dkt. 36, at 2. He asserts that the videos are complete and have not been altered. *Id.* Kemppainen states that on video "200rc pol 001.MOV" has a date and time stamp of September 17, 2016 at 18:28 to 18:31. *Id.*

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTIONS TO QUASH - 4

The parties also submitted the videos by Kemppainen that allegedly shows the program being showed at the restaurant. The videos are of poor quality and it is difficult to see the images or understand the sound.

The Defendants maintain that they did not "purchase or otherwise procure, the program through [the restaurant's] television provider, DISH." Dkt. 20, at 2. They point to DISH bills, which show that they did not purchased the program. *Id.*, at 37-40. The Defendants assert that they did not have more customers or an increase in profits during when the fight aired compared with Saturdays before or after the fight. Dkt. 20, at 2. They maintain that they did not advertise that they were showing the fight. *Id.* They point to a response to an inquiry on Facebook about whether the restaurant would be showing the fight, the Defendants said that they "doubt[ed] it." Dkt. 20, at 59. They explained that they had the fight last year due to several customers' requests, but because that customer was the only one to request the program this year, probably not. Dkt. 20, at 59. They indicated that if more people requested that they show the fight, they may. *Id.*

On August 30, 2018, the Plaintiff filed this case, asserting claims under the Communications Act ("CA"), 47 U.S.C. § 605, et. seq., and 47 U.S.C. § 553, and for trespass to chattel. Dkt. 1. The Plaintiff seeks damages, attorneys' fees, and costs. *Id.*

This opinion will now address the pending motions to quash (Dkts. 24 and 27), motion to strike portions of the declaration of Karina Zapata (Dkt. 33), and lastly, the motion for summary judgment (Dkt. 19).

## II. DISCUSSION

### A. STANDARD ON MOTIONS TO QUASH

Fed. R. Civ. P. 45(d)(3)(A) "Quashing or Modifying a Subpoena," provides,

> *When Required*. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> (i)     fails to allow a reasonable time to comply;
>
> (ii)    requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii)   requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv)   subjects a person to undue burden.

All discovery is guided by Fed. R. Civ. P. 26 (b)(1), which provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

**B. MOTIONS TO QUASH**

The Defendants' motion to quash the subpoena to DISH (Dkt. 24) should be granted. This subpoena is overbroad and subjects DISH to an undue burden. This subpoena requests records for both the private residence of Defendants Marcelino Zapata and Loreno Salgado (which is six miles from the restaurant), and for the restaurant since the accounts were opened. Under 45, a subpoena can be quashed if it is overbroad. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003). The DISH records for the restaurant for August, September, and October of 2016 (the fight was September 17, 2016) were provided to the Plaintiff. There is no showing that the additional records would be relevant. The Plaintiff did not respond to this motion to quash. The Defendants' motion to quash should be granted.

The Plaintiff's motion to quash the subpoena of Kemppainen (Dkt. 27) should be denied without prejudice. The subpoena requires Kemppainen to provide:

> (1) All documents, including but not limited to emails, notes, photographs, contracts, and invoices related to la Poblanita, LLP; Marcelino Zapata; Loreno Salgado; and /or Karina Zapata. Your response should include, but not be limited to, all communication between yourself and counsel on behalf of J & J Sports Productions, Inc. and/or representatives of J & J Sports Productions, Inc.
> (2) A list of all other establishments and/or locations that you investigated of J & J Sports Productions, Inc. on September 17, 2016.
> (3) A list of all the dates you visited La Poblanita, LLP.

Dkt. 28, at 4. The Plaintiff moves to quash this subpoena of Kemppainen, a private investigator, maintaining that it "implicates" matters subject to work-product doctrine protection. Dkt. 27. The Plaintiff states that it "understands its ultimate obligation to produce a privilege log . . . but, as it cannot be certain at this time what information [Kemppainen] may be inclined to produce, such a log is not feasible." *Id.* The Defendants object, and note that the Plaintiff has failed to produce a privilege log and failed to specifically identify the supposed work-product. Dkt. 31. The Defendants also maintain that the Plaintiff has not shown that it has standing to object to the subpoena. *Id.* They argue should the Court be inclined to act, limiting rather than quashing the subpoena, is appropriate. *Id.* In reply, the Plaintiff "modifies" its motion and does not object to Kemppainen producing items responsive to (2) and (3) of the subpoena and certain documents responsive to (1). Dkt. 41, at 2. It now objects to Kemppainen's production of "A. Any documents, including emails, evidencing or related to any communication between Kemppainen Investigations and the attorneys representing J & J Sports Productions, Inc. B. Any notes prepared in connection with any such communications." *Id.* The Plaintiff also states that it does not object to the production of the contract between Kemppainen and J & J if it is done pursuant to a protective order. *Id.* It further moves for an order requiring that all items produced by

Kemppainen are done so pursuant to a protective order. *Id.* Lastly, the Plaintiff attaches a one-page "[draft] Plaintiff's Privilege Log." Dkt. 41, at 6.

The Plaintiff's motion to quash (Dkt. 27) should be denied without prejudice. While the subpoena is broad, the evidence sought is relevant (or could lead to relevant information), particularly considering the import of Kemppainen's records and testimony to the Plaintiff's case. The Plaintiff's original motion failed to specifically identify the work-product it sought to protect. The arguments raised for the first time in the reply, like the materials J & J now objects to having produced and the motion for protective order, should not be considered because the Defendants did not have an opportunity to respond. The undersigned notes that it appears that the parties are close to agreement on the scope of the subpoena. It is not clear whether they would agree to a protective order, like this district's Model Stipulated Protective Order. While it is not required by the rules, they should make every effort to work together to resolve this discovery issue. Only if it becomes necessary, after attempting to resolve the issues together, should the parties involve the Court.

## C. MOTION TO STRIKE PORTIONS OF KARINA ZAPATA DECLARATION

For the purposes of these motions alone, the Plaintiff's motion to strike (Dkt. 33) paragraphs 13-17 of the Declaration of Karina Zapata (Dkt. 20, at 3) should be denied. In these paragraphs, Ms. Zapata discusses her view of what the Kemppainen videos and photographs submitted contain. This testimony is not particularly relevant - the Court is able to view the content of these items itself. But, her testimony gives some context.

To the extent that the Plaintiff moves to strike (Dkt. 33) the remainder of Ms. Zapata's declaration due to lack of personal knowledge (she admitted that she could not remember if she was in the restaurant that night), the motion should be denied. The Plaintiff's insistence that her

declaration is inadmissible with respect to whether the program was on that night or intercepted goes to the weight of her statements. Further, some of her declaration's statements do not require that she was there that night. The declaration should not be excluded at this point.

### D. STANDARD ON MOTION FOR SUMMARY JUDGEMENT

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts

specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### E. CLAIM FOR VIOLATION OF THE CA UNDER § 553 and § 605

#### 1. Violation of § 553

Section 553 (a)(1) of the CA prohibits the unauthorized receipt or interception of a "communications service offered over a cable system." 47 U.S.C. § 553 (a)(1).

In their motion for summary judgment, the Defendants argue that claims under § 553 of the CA pertain to the interception of cable, and because the Defendants only have satellite t.v., the Plaintiff cannot point to evidence of a claim under § 553 here. Dkt. 19, at 2 n. 1. The Defendants do not meaningfully dispute this argument, so the claim should be dismissed. Further, there is no evidence in the record of a cable t.v. receipt or interception.

#### 2. Violation of § 605

Under 47 U.S.C. § 605 (a) of the CA, it is unlawful to "receiv[e], assist[ ] in receiving, transmit[ ], or assist[ ] in transmitting, any interstate or foreign communication by wire or radio" without authorization. Section 605 (a) "also prohibits 'divulg[ing] or publish[ing]' information gleaned from unauthorized signal reception, or otherwise using that information for one's 'own benefit or for the benefit of another not entitled thereto.'" *DirecTV, Inc. v. Webb*, 545 F.3d 837, 848 (9th Cir. 2008)(*quoting* § 605 (a)). As is relevant here, "the 'communications' protected by § 605 (a) include satellite television signals." *Id.,* at 844. "Liability under section 605 requires proof that a defendant has (1) intercepted or aided the interception of, and (2) divulged or

published, or aided the divulging or publishing of, a communication transmitted by the plaintiff." *California Satellite Sys. v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985).

The Defendants argue that summary judgment is warranted because the Plaintiff has no evidence that they intercepted, or aided in the interception or, or published, or aided in the publishing of, the program because it is not possible to tell whether the videos were of the program due to their poor quality. Dkt. 19. The Defendants also argue that the Plaintiff is not an "aggrieved person" permitted to bring a private right of action under § 605 (e)(3)(A) because the contract (which purported to give the Plaintiff exclusive rights to the fight shown in English) was not signed by both parties. *Id.* Further, the Defendants argue that there is no evidence that the fight was in English. *Id.*

The Defendants' motion for summary judgment (Dkt. 19) should be denied. There are genuine issues of fact as to whether the Defendants intercepted the program. Further, there are genuine issues of fact as to whether the Defendants published (displayed the program) at the restaurant. While the video is of poor quality and it is not clear whether the program was in English, the Plaintiff points to additional evidence in the record to support its claim. Kemppainen states that he was in the restaurant and saw part of the program in English. Further, the Defendants admit that they receive programming through a satellite dish. Construing the facts in a light most favorable to the Plaintiff, there is sufficient evidence, which if believed, would demonstrate that the Defendants intercepted and published the program.

Additionally, there are issues of fact as to whether the Plaintiff was an "aggrieved" party under the statute. The CA defines "any person aggrieved" as including "any person with proprietary rights in the intercepted communication." 47 U.S.C.A. § 605 (d)(6). While thin, the July 27, 2016 letter contains sufficient facts of an offer on behalf of J & J and an acceptance on

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTIONS TO QUASH - 11

behalf of Golden Boy Productions LLC, and when combined with J & J's president's testimony, is sufficient for a jury to conclude that they had a contract giving J & J the exclusive rights to the fight. If believed, that would give J & J proprietary rights in the program such that J & J would be a "person aggrieved," entitled to bring an enforcement action under 47 U.S.C. § 605 (e)(3). The claim under § 605 should not be dismissed.

## III. ORDER

**IT IS ORDERED THAT:**

- The Defendants' Motion to Quash Plaintiff's Subpoena Duces Tecum to Dish Network, LLC (Dkt. 24) **IS GRANTED**;
- The Plaintiff's Motion to Quash Subpoena re: Kemppainen (Dkt. 27) **IS DENIED WITHOUT PREJUDICE**;
- The Plaintiff's motion to strike (Dkt. 33) **IS DENIED**; and
- The Defendants' Motion for Summary Judgment (Dkt. 19) **IS GRANTED,** as to the Plaintiff's claim under 47 U.S.C. § 553, and **DENIED,** as to the Plaintiff's claim under 47 U.S.C. § 605
    - The Plaintiff's claim under 47 U.S.C. § 553 **IS DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 6th day of May, 2019.

ROBERT J. BRYAN
United States District Judge